Filed 12/6/21  In re Katherine A. CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA
## SECOND APPELLATE DISTRICT
## DIVISION THREE

| | |
|---|---|
| In re KATHERINE A., et al., Persons Coming Under the Juvenile Court Law. | B309881 |
| _____ | (Los Angeles County Super. Ct. No. 20CCJP04451A-B) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING [NO CHANGE IN JUDGMENT] |
| v. | |
| ANTHONY A., | |
| Defendant and Appellant. | |

It is ordered as follows:

1.     The opinion in this matter, filed November 15, 2021, is modified by adding the following four paragraphs after the final paragraph of the opinion (page 19):

In any event, father's contentions lack merit.  "[T]o remove a child from a parent, DCFS must prove by clear and convincing

evidence that, at the time of the dispositional hearing, 'a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor' exists, and that there are 'no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody.' (§ 361, subd. (c)(1); see *In re Ashly F.* (2014) 225 Cal.App.4th 803, 809.) . . . . [¶] ' "In reviewing a challenge to the sufficiency of the evidence supporting the jurisdictional findings and disposition, we determine if substantial evidence, contradicted or uncontradicted, supports them. 'In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court.' 'We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court.' " ' (*In re I.J.* (2013) 56 Cal.4th 766, 773.) In reviewing for substantial evidence to support a dispositional order removing a child, we 'keep[ ] in mind that the [juvenile] court was required to make its order based on the higher standard of clear and convincing evidence.' (*Ashly F., supra*, 225 Cal.App.4th at p. 809; see *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1005.)" (*In re Nathan E.* (2021) 61 Cal.App.5th 114, 122–123.)

In the present case, abundant evidence supported the juvenile court's removal order. As discussed more fully in the prior section, there was substantial evidence that father's conduct had caused Katherine to suffer serious emotional damage, including anxiety, depression, and self-harm, and had put both children at risk of serious physical harm. There also was substantial evidence—including the evidence described in

2

the prior section—that the children could not be adequately protected without removing them from father's care.

Additionally, we reject on the merits father's contention that the removal order must be reversed because the juvenile court failed to state the facts on which it based its decision. Even were we to conclude that the juvenile court's factual findings were deficient, we would find such deficiency to be harmless. " '[C]ases involving a court's obligation to make findings regarding a minor's change of custody or commitment have held the failure to do so will be deemed harmless where "it is not reasonably probable such finding, if made, would have been in favor of continued parental custody." ' (*In re Jason L.* (1990) 222 Cal.App.3d 1206, 1218.) As explained in [*In re*] *D.P.* [(2020)] 44 Cal.App.5th [1058,] 1068, this is because a removal order 'is subject to the constitutional mandate that no judgment shall be set aside "unless, after an examination of the entire cause, including the evidence, the [appellate] court shall be of the opinion that the error complained of has resulted in a miscarriage of justice." ' 'Under this mandate a "miscarriage of justice" will be declared only when the appellate court, after examining the entire case, is of the opinion that " 'it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.' " ' " (*In re L.O.* (2021) 67 Cal.App.5th 227, 247.)

Based on our review of the entire record, and as discussed previously, we conclude it is not reasonably probable that the juvenile court would have found that the children could safely be returned to father.

2. The petition for rehearing is denied. There is no change in the judgment.

_____
EDMON, P.J.          EGERTON, J.          WINDHAM, J.*

*       Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 11/15/21  In re Katherine A. CA2/3 (unmodified opinion)

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA
## SECOND APPELLATE DISTRICT
## DIVISION THREE

| | |
|---|---|
| In re KATHERINE A., et al., Persons Coming Under the Juvenile Court Law. | B309881 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. 20CCJP04451A-B) |
| Plaintiff and Respondent, | |
| v. | |
| ANTHONY A., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Philip L. Soto, Judge.  Affirmed.

Benjamin Ekenes, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel and Aileen Wong, Deputy County Counsel for Plaintiff and Respondent.

Anthony A. (father) appeals from an order adjudicating his children juvenile court dependents and removing them from his custody. Father contends the allegations of the petition should have been adjudicated by a family court, not a juvenile court; the allegations were barred by collateral estoppel; substantial evidence did not support the juvenile court's jurisdictional findings; and the juvenile court abused its discretion by removing the children from father's custody and designating their mother the sole educational rights holder. We find no error, and thus we affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

Father and Imelda C. (mother)[1] are the parents of Katherine A. (born in December 2003) and Immanuel A. (born in November 2004). The parents were married, but separated in early 2019. They continued to live together until about June 2020.[2]

*A.      Mother's Request for a Domestic Violence Restraining Order*

Mother filed a request for a domestic violence restraining order against father in the family court on July 17. Mother alleged that father verbally abused Katherine, had threatened to physically assault Immanuel, and threatened mother.[3] The

---

[1]      Mother is not a party to this appeal.

[2]      All subsequent dates are in 2020, unless otherwise stated.

[3]      On May 14, 2021, father filed a request for judicial notice of the restraining order request, the minute order and reporter's transcript of the restraining order hearing, and the family court's register of actions. We deferred ruling on the motion on June 3, 2021, and we now grant it.

superior court denied mother's request, finding that mother had not "describe[d] in sufficient detail the most recent incidents of abuse, such as what happened, the dates, who did what to whom, or any injuries or history of abuse." The superior court also denied mother's request for sole custody of the children, instead ordering the parents to share legal and physical custody.

### B.    DCFS Investigation

The family came to the attention of the Los Angeles County Department of Children and Family Services (DCFS) in July, as the result of two calls to the child abuse hotline. A children's social worker (CSW) interviewed 16-year-old Katherine, who said father had kicked mother out of the family home in May because he blamed her for the death of his pet tarantula. Katherine said her parents argued frequently, and father insisted that Katherine be present during their arguments because she should be a "witness to her parents' problems." Father "brainwashed" Katherine by telling her mother was mentally ill and was an unfit mother. Katherine said she stayed with father after mother moved out because she was afraid to tell father that she did not want to live with him.

Katherine reported that father had a 17-year-old girlfriend in Tijuana, whom he visited frequently. Katherine said there was very little food in the house because most of father's money went to the girlfriend. Father became angry if the children asked for food. Recently, father took Katherine and Immanuel to Tijuana with him, stopping at a marijuana dispensary before they crossed the U.S./Mexico border. Once in Tijuana, father allowed the girlfriend to drive his car, the family was stopped at a checkpoint, and the car was searched. The Mexican police threatened to tow father's car and to arrest him for transporting

marijuana to a minor; father was able to avoid arrest by paying the police officer a bribe of a $1,000. After the incident, Katherine had a panic attack.

Katherine said father took her and Immanuel to Tijuana two more times after this incident, which made her very anxious. She finally told father she wanted to live with mother. Father was upset, but ultimately consented. Katherine reported feeling much safer with mother because mother provided structure and made sure the children were fed and cared for.

Katherine reported several instances in which father had been sexually inappropriate with her. She said that about a year earlier, father had told her, Immanuel, and their cousin that he would give them money if they found a girl of any age for him to have sex with. Father also regularly watched pornography on his computer while Katherine was in the same room, and he had more than once shown her pictures on his phone of partially naked women he was dating and described intimate details of his activities with the women. If Katherine asked him to stop watching pornography, he would become upset. He had also told Katherine that he had been sexually abused when he was a child, and that he and his sister had sex with one another when they were in high school, which he described as " 'normal.' "

Katherine said she was afraid of father because he became angry when she disagreed with him. He had never harmed her physically, but he yelled frequently and had threatened to kill her cats. Katherine had begun cutting herself as a result of father's verbal abuse; when father learned about the cutting, he threatened to take her to a psychiatric ward where she would not be allowed to see her family. Father said the cuts "better be caused by mother and not him." Katherine reported that she had

4

problems falling asleep and was having nightmares about seeing father in public.

Like Katherine, Immanuel said father had forced mother to leave the home because he blamed her for the death of his pet tarantula. During the month Immanuel and Katherine lived with father, there was very little food in the house and the children were not well cared for. Father would "randomly become upset" and frequently said things to Katherine that made her cry, including telling her that she would have to go to a hospital "forever" if she was cutting herself and that her boyfriend was going to leave her. Immanuel also reported a recent incident in which father threatened to "put on boxing gloves to beat [Immanuel] up." Immanuel said father had threatened to have paternal relatives hurt members of mother's family, and like Katherine, he described an incident in which father had offered to pay him if he found a girl with whom father could have sex. He said father watched pornography around him and his sister.

Immanuel repeated Katherine's account of the incident in Tijuana, after which Katherine had started hyperventilating and had a panic attack. He and Katherine subsequently moved in with mother, where he felt safe. He said he sometimes feared father.

Katherine's therapist said Katherine reported hiding from father because she was afraid of him. Katherine talked frequently about what had happened when she lived with father, cried often, and was having a difficult time processing her experiences.

Mother told the CSW that after father kicked her out of the house, he turned off her cell phone so she could not speak with the children. She said father was emotionally abusive and had

threatened to have his friends beat her up. He had also threatened to beat up Immanuel. Mother said father had often told her she was crazy and unfit to raise children, had threatened to have her detained in a psychiatric facility, and had threatened to make her look like an unfit parent if she sought child support.

Father told the CSW that mother was psychotic, a sociopath, and had been diagnosed with many mental health disorders. He said he had safety concerns about the children remaining with mother because she was unpredictable and explosive. He admitted talking to a woman in Tijuana whom he met through a dating website, but he said the woman was 19 years old and they were "just friends." Father refused to provide the woman's name, date of birth, or phone number. He denied withholding food from the children, lashing out at the children, and bribing the Mexican police.

C.     *Petition; Detention*

DCFS removed the children from father on August 21 and filed a juvenile dependency petition on August 25. As subsequently amended, the petition alleged that father endangered the children by driving with them to Mexico with marijuana in his car (Welf. & Inst. Code, § 300, subd. (b)), and emotionally abused Katherine by yelling at her, describing his childhood sexual trauma, suicidal thoughts, and romantic relationships, and threatening to kill her cats, causing Katherine to suffer panic attacks, anxiety, and depression, and to engage in self-harm (*id.*, subd. (c)).[4]

---

[4]     All subsequent statutory references are to the Welfare and Institutions Code.

6

On August 28, the juvenile court ordered the children detained from father and placed with mother under DCFS supervision.

D.    *Jurisdiction/Disposition Report*

In November, Katherine told the CSW that when she lived with father, "it would be constant stress from the moment she woke up." She felt much happier since moving in with mother and was no longer experiencing chronic stress. Immanuel, too, said he preferred living with mother.

Mother said that Katherine's mood had improved since transitioning from father's home. Mother said Katherine was crying less, had regained her appetite, and expressed less fear that father was "coming to pick them up."

Father admitted yelling at Katherine, but he said it was justified because she did not clean up after herself and "in his house, you do what he says." He said that "if screaming caused that much trauma, then the whole world would come down." He denied threatening to kill Katherine's cat, but admitted taking the cat to the pound, where "they can do what they want with the cat." Father believed the children preferred living with mother because she had fewer rules. With regard to his trips to Tijuana, father said he knew his children did not want to go, but he felt he "ha[d] to take them" because mother "cyber stalked" him and "would be upset [if] the kids were home by themselves." Father said he had spent his life being his kids' protector, and he described himself as a "beaten man."

There were no visits between father and the children between August and November because the children were not comfortable seeing or speaking to father.

*E.    Jurisdiction/Disposition Hearing*

At the November 20 hearing, father's counsel argued that DCFS had not met its burden as to either allegation of the petition. As to the section 300, subdivision (b) count, counsel acknowledged that father had some "boundary issues," but she contended that father's conduct had not placed the children at risk of serious physical harm. As to the subdivision (c) count, counsel said father had made legitimate parenting choices, as a result of which the children "turned on him, and said, 'Let's go with mom now.'" Counsel also argued that all the allegations of the petition had been litigated in the family court, and "it looks like the mother is trying to get a second bite at the apple." Counsel urged: "This case belongs in family law court, Your Honor. This is a custody battle. And there are ongoing family law proceedings."

The court sustained the allegations of the amended petition, found that continuance in father's home would be contrary to the children's welfare, and ordered the children removed from father and placed with mother under DCFS supervision. The court further ordered father to attend anger management and parenting classes, participate in individual counseling, and attend conjoint counseling with the children if recommended by a therapist. Father was granted monitored visits with both children.

Father timely appealed from the jurisdictional and dispositional findings and order.

## DISCUSSION

Father contends:  (1) the juvenile court erred in asserting jurisdiction over the children because the disputes between the parents should have been resolved in a family court, not a juvenile court; (2) the juvenile court was barred by collateral estoppel from adjudicating the same factual issues already decided by the family court; (3) the allegations of the petition were not supported by substantial evidence; and (4) the juvenile court erred by removing the children from father and giving mother sole educational rights.  For the reasons that follow, these contentions lack merit.

### A.     *The Juvenile Court Did Not Err by Asserting Jurisdiction Over the Children*

Father contends the juvenile court erred by asserting dependency jurisdiction over the children because " '[t]he family court, rather than the juvenile court, is the proper forum for adjudicating child custody disputes.' "  According to father, the present case involved merely a custody dispute between the parents, which mother moved into dependency court "to gain advantage in a custody battle [and] to get a 'second bite at the apple.' "  Thus, father suggests, "the assertion of dependency jurisdiction was improper as a matter of law."

Father's contention is without merit.  As a factual matter, father's suggestion that mother initiated the dependency proceeding is inaccurate.  The proceeding was initiated by DCFS, not by mother, and it does not appear that mother made either of the calls to the child abuse hotline that catalyzed DCFS's investigation.  Further, the petition was not based on the hotline reports, but instead followed DCFS's independent investigation of the allegations.

9

In any event, regardless of the origins of the investigation, we are not aware of any authority—and father cites none—for the proposition that a juvenile court may abstain from exercising otherwise-proper jurisdiction because child custody is already being litigated in a family court.  Indeed, another division of this court has expressly decided to the contrary, holding that a juvenile court erred by dismissing a dependency petition on the grounds that a mother and father were already litigating custody of the children in family court.  In *In re Nicholas E.* (2015) 236 Cal.App.4th 458, the appellate court explained that a rule permitting a juvenile court to abstain in favor of a family court "is inconsistent with the long-standing principle that dependency proceedings have primacy over family court proceedings when it comes to child custody matters." (*Id.* at p. 465.)  The court said: "There is good reason for this principle:  Family court proceedings are aimed at assessing 'the best interests of the child *as between two parents*.' [Citation.]  Dependency proceedings are not so narrow in focus, and invoke the state's role as *parens patriae* in evaluating the best interest of the child, even if it means placement with someone other than the parents.  [Citations.]  A rule requiring abstention without any adjudication dilutes the primacy of dependency jurisdiction." (*Ibid.*)  Thus, the court concluded, where DCFS establishes that dependency jurisdiction is warranted, the family court "must give way to the primacy of dependency court jurisdiction and its special role.  To rob [DCFS] of its chance to prove its allegations is to elevate judicial economy above the protection of children, in contravention of our Legislature's express declaration that dependency jurisdiction be construed broadly." (*Id.* at p. 466; see also *In re Anne P.* (1988) 199 Cal.App.3d 183, 193 ["It has long been established that a

superior court order awarding custody of minor children in a divorce action does not, in itself, deprive the juvenile court of jurisdiction to later litigate matters and issue orders affecting the custody of those children"]; § 362.4, subd. (a) [when juvenile court terminates jurisdiction over child, if "proceedings for dissolution of marriage . . . are pending in the superior court . . . the juvenile court on its own motion may issue a protective order . . . and an order determining the custody of, or visitation with, the child"].)

*Nicholas E.* correctly applies California's statutory and decisional law, and we adopt its analysis. We therefore reject father's contention that the juvenile court should have abstained from adjudicating the dependency petition.

B.      *Collateral Estoppel Principles Did Not Bar the Juvenile Court from Adjudicating the Petition*

Father next contends that the juvenile court should have dismissed the dependency petition because the doctrine of collateral estoppel barred relitigation of the same issues already decided by the family court. Father urges that when the family court denied mother's request for a restraining order, it necessarily decided that shared physical custody would be in the children's best interests, and that the children were *not* at substantial risk of serious physical or emotional damage in father's care. Accordingly, father suggests, "the doctrine of collateral estoppel precluded mother (indirectly via DCFS) from shopping for judges and relitigating the same factual issues in dependency court."

It is well established that the litigation of custody issues in family court does not estop the juvenile court from considering factually identical issues in dependency proceedings. In *In re Benjamin D.* (1991) 227 Cal.App.3d 1464, 1469 (*Benjamin D.*),

11

a family court awarded a mother primary physical custody over a child and granted the father regular visitation; the family court later denied mother's request, based on her testimony that father physically abused the child, to eliminate father's visitation entirely. (*Id.* at p. 1467.) Subsequently, the juvenile court sustained a dependency petition alleging that the child was subject to the court's jurisdiction's because he had been physically abused by his father. (*Id.* at p. 1468.) The father appealed, contending that the dependency court erred by considering evidence of abuse that had also been before the family court. The Court of Appeal disagreed and affirmed. It explained: "Quite obviously, prior consideration of the custody of a minor by a family law court cannot deprive a juvenile court of jurisdiction to make orders to protect the minor. [Citations.] The purposes and parties of family law and juvenile proceedings, while often overlapping, are not the same. The family law court adjudicates the rights of private parties vis-a-vis each other. The juvenile court takes into account the interest of the state as the guardian of persons with legal disabilities. [Citation.] [¶] . . . Accordingly, . . . a juvenile court may properly consider evidence of a parent's past conduct, regardless of whether such evidence may have been adduced in another proceeding . . . . [Citation.] [¶] . . . [¶] . . . *A juvenile court must not shut its eyes to facts pointing to the threat of future injury just because those facts may have been previously aired in a family law forum*." (*Id.* at pp. 1469–1470, italics added, fn. omitted.)

The Court of Appeal similarly concluded in *In re Desiree B.* (1992) 8 Cal.App.4th 286 (*Desiree B.*). There, the juvenile court sustained a petition alleging that a child had been sexually abused by her father; on appeal, the father urged the juvenile

12

court erred in considering the evidence of sexual abuse because it previously had been considered by a family court. (*Id.* at pp. 290–291.) The Court of Appeal disagreed, holding that a juvenile court in a dependency proceeding "is not estopped from reconsidering issues litigated in a prior family law proceeding." (*Id.* at p. 291.) It explained: " '[O]ur Supreme Court [has explained] that the "issues" before the family law court and juvenile court can never, in fact, be "identical," even if some or all of the facts of abuse or neglect adduced in the two proceedings are the same, because of the important differences between the purposes and operations of the two courts, and the state's overriding concern for the protection of the children.' [Citation.] [¶] . . . [T]he actions of private parties . . . cannot defeat the obligations of the juvenile court. Indeed, where there is abject acrimony between the parents, the juvenile court, with its inclusion of the state as a litigant and its provisions for the appointment of counsel to represent the minor, is the best forum for consideration of issues concerning custody when the child comes within one of the descriptions contained in section 300. [Citation.] [¶] . . . *The litigation of custody issues in family court does not estop the juvenile court from reconsidering factually identical issues.*" (*Id.* at pp. 292–293, italics added; see also *In re Travis C.* (1991) 233 Cal.App.3d 492, 503 ["despite the fact that there was a continued hearing pending in the family law court which involved factual allegations of sexual abuse by minors' father, the juvenile court had jurisdiction over a petition containing the same factual allegations, in its role as *parens patriae*"]; *Dupes v. Superior Court* (1917) 176 Cal. 440, 441–442 ["The mere fact that a litigation is pending between the parents and that an order regarding the custody of the children has been

13

made therein does not take away the power of the state nor prevent the exercise of that power under the Juvenile Court law."].)[5]

In the present case, as in *Benjamin D.* and *Desiree B.*, the family court's denial of mother's application for a restraining order did not preclude the juvenile court from exercising jurisdiction over the children. As a factual matter, the family court did not find that father had not physically endangered or emotionally abused the children—it found only that mother, who was self-represented, had failed to "describe[] in sufficient detail the most recent incidents of abuse." But even if the family court had found against mother on the merits of her application, that finding would not have precluded the juvenile court from exercising jurisdiction over the children based on the same factual allegations because the juvenile court had an independent obligation under state law to protect the children from physical and emotional injury. The juvenile court did not err in so concluding.

---

[5]     None of the cases father cites in his opening brief are relevant to our analysis. Most of the cases father relies on arose outside the dependency context; the single dependency case he cites, *In re Donovan L.* (2016) 244 Cal.App.4th 1075, considered whether a parentage finding made in one dependency case had collateral estoppel effect in a subsequent dependency case.

*In re Joshua C.* (1994) 24 Cal.App.4th 1544, 1548, which father cites in his reply brief, is inapposite. *Joshua C.* held that a juvenile court's factual findings in a dependency proceeding are preclusive in family court—*not*, as father contends here, that a family court's findings are preclusive in dependency proceedings.

14

*C.    Substantial Evidence Supported the
        Juvenile Court's Findings*

Father next contends that the juvenile court's assertion of jurisdiction was improper because the allegations of the dependency petition were not supported by substantial evidence. We disagree.

Section 300 provides that a child is within the jurisdiction of the juvenile court if the child "has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent . . . to adequately supervise or protect the child" (subdivision (b)), or "is suffering serious emotional damage, or is at substantial risk of suffering serious emotional damage, evidenced by severe anxiety, depression, withdrawal, or untoward aggressive behavior toward self or others, as a result of the conduct of the parent" (subdivision (c)).

We review the juvenile court's jurisdictional findings for substantial evidence. " 'In reviewing a challenge to the sufficiency of the evidence supporting the jurisdictional findings and disposition, we determine if substantial evidence, contradicted or uncontradicted, supports them. "In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations." ' " (*In re I.J.* (2013) 56 Cal.4th 766, 773.) " ' "We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court. [Citations.]" ' " (*Ibid.*)

There was abundant evidence in the present case that Katherine had suffered serious emotional damage—including

15

anxiety, depression, and self-harm—as a result of father's conduct. Katherine reported that father was easily angered, yelled frequently, and overwhelmed her emotionally by discussing his problems with her. He forced the children to be present during arguments between mother and father, threatened to kill Katherine's cats and to separate Katherine and Immanuel, and told the children their mother was mentally ill. He frequently was sexually inappropriate with Katherine, showing her pictures of partially naked women he was dating, describing his sexual contact with women, watching pornography in her presence, and offering her money to find a girl for him to have sex with. Katherine told her therapist and the CSW that father's conduct caused her to feel stressed, overwhelmed, and anxious. As a result, Katherine began having panic attacks, crying frequently, and cutting herself. She also described having difficulty sleeping and nightmares about seeing father. This constituted "serious emotional damage" within the meaning of section 300, subdivision (c). (See *In re D.B.* (2020) 48 Cal.App.5th 613, 621 [juvenile court properly sustained dependency petition under section 300, subdivision (c), where father's conduct caused his daughter to feel scared and anxious, to cry frequently, and to fear interacting with father]; *In re D.P.* (2015) 237 Cal.App.4th 911, 919–920 [substantial evidence supported juvenile court's jurisdictional finding under section 300, subdivision (c) where, although the child had not yet suffered serious emotional harm, he was at risk of future harm because he was exposed to constant argument and domestic violence between his parents]; *In re Matthew S.* (1996) 41 Cal.App.4th 1311, 1320–1321 [juvenile court properly sustained petition under section 300,

16

subdivision (c) where mother "brings a foreboding sense of dread, danger and catastrophe to the lives of her children"].)

There also was substantial evidence that father's conduct put the children at risk of serious physical harm. Both children reported that father crossed the U.S./Mexico border with drugs in his car. Mexican police stopped the family, searched the car, and threatened to arrest father; father was able to avoid arrest only by paying a $1,000 bribe. The potential for physical danger to the children if father had been arrested is manifest—had father been arrested, the children would have been stranded in Mexico without adult supervision or the ability to get home.[6]

Citing *In re J.N.* (2010) 181 Cal.App.4th 1010 (*J.N.*), father contends that even if his conduct "somehow" placed the children at substantial risk of serious physical harm, it did not give rise to dependency jurisdiction because it was a "single, isolated incident." We do not agree. In *J.N.*, a father drove under the influence with his three children and intoxicated wife, and crashed into a light pole. (*Id.* at p. 1014.) The Court of Appeal reversed the juvenile court's jurisdictional finding that the children were at risk of harm from the incident, noting that the parents had no prior criminal history or history of substance abuse, there was no pattern of past risk, and there was no finding of an ongoing substance abuse problem. (*Id.* at pp. 1020–2022,

---

[6] Father contends that the incident in Mexico did not provide a sufficient basis for the juvenile court to exercise jurisdiction because "[t]here is no 'Go to jail, lose your child' rule in California." While the legal principle is correct, it does not apply here, where father has not demonstrated that he could have made adequate arrangements for his children in Mexico had he been arrested.

17

1027.)  Further, the parents expressed regret, were cooperative, and were willing to change.  (*Id.* at pp. 1018–1019.)

In the present case, in contrast, there is evidence that father repeatedly put his own needs—specifically, his desire for sexual gratification—ahead of the needs of his children.  Father refused to acknowledge many of the troubling incidents described by the children and he defended others, saying the only thing he was guilty of was "having too much empathy."  And, when he was told that his children were afraid to visit him and that his conduct triggered Katherine's cutting, father said he felt his children had betrayed him.

As other courts have said, "[o]ne cannot correct a problem one fails to acknowledge."  (*In re Gabriel K.* (2012) 203 Cal.App.4th 188, 197.)  Here, father refused to accept responsibility for any of his conduct that endangered his children, including his near-arrest in Mexico and his attempt to recruit his children to help him find new sexual partners.  The juvenile court therefore reasonably concluded that DCFS's intervention was necessary to protect the children from a risk of future harm.

D. *The Juvenile Court Did Not Abuse Its Discretion by Removing the Children from Father and Ordering that Only Mother Hold Educational Rights*

Father contends the removal order must be reversed because the juvenile court failed to state the facts on which it based its decision, and substantial evidence did not support the juvenile court's findings that the children were at risk of harm and there were no reasonable alternatives to removal.  Father also contends that the juvenile court abused its discretion by ordering that educational rights be held by mother only.

18

Father did not raise any of these objections in the juvenile court, and thus the juvenile court did not have the opportunity to address them.  Father therefore has forfeited these objections on appeal.  (See, e.g., *In re S.B.* (2004) 32 Cal.4th 1287, 1293 ["a reviewing court ordinarily will not consider a challenge to a ruling if an objection could have been but was not made in the trial court."]; *In re Dakota H.* (2005) 132 Cal.App.4th 212, 222 [parent "may not assert theories on appeal which were not raised in the [juvenile] court"].)

## DISPOSITION

The November 20, 2020 jurisdictional and dispositional order is affirmed.  Father's request for judicial notice, filed May 14, 2021, is granted.  (See fn. 3, *ante*.)

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EDMON, P. J.

We concur:

EGERTON, J.

WINDHAM, J.*

---

\*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.